# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      *Plaintiff*,

    v.                                      Civil No.

296 U.S. $20 LIBERTY HEAD GOLD COINS,

167 U.S. MINT $50 AMERICAN EAGLE PROOF GOLD COINS,

54 U.S. MINT $5 AMERICAN EAGLE PROOF GOLD COINS,

51 U.S. MINT $25 AMERICAN EAGLE PROOF GOLD COINS,

34 U.S. MINT $10 AMERICAN EAGLE PROOF GOLD COINS,

25 U.S. $10 INDIAN HEAD GOLD COINS,

15 U.S. MINT $50 AMERICAN BUFFALO PROOF GOLD COINS,

4 U.S. MINT HALF DOLLAR KENNEDY PROOF GOLD COINS,

9,610 $1 U.S. MINT AMERICAN EAGLE SILVER BULLION COINS,

27 ASAHI REFINING 1 TROY OUNCE SILVER ROUNDS,

24 SUNSHINE MINT 1 TROY OUNCE SILVER ROUNDS,

43 UNKNOWN MINT 1 TROY OUNCE BUFFALO DESIGN SILVER ROUNDS.

      *Defendants-in-rem.*

## <u>VERIFIED COMPLAINT FOR FORFEITURE *IN REM*</u>

Plaintiff, United States of America, brings this complaint in accordance with

Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims

and Asset Forfeiture Actions, and alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of 18 U.S.C. § 1956 and 1957 that is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 and 1343 that is subject to forfeiture pursuant to 18 U.S.C. § 18 U.S.C. § 981(a)(1)(C).

## *DEFENDANTS-IN-REM*

2.    The defendants-in-rem consist of the following:

   a. 296 U.S. $20 LIBERTY HEAD GOLD COINS,

   b. 167 U.S. MINT $50 AMERICAN EAGLE PROOF GOLD COINS,

   c. 54 U.S. MINT $5 AMERICAN EAGLE PROOF GOLD COINS,

   d. 51 U.S. MINT $25 AMERICAN EAGLE PROOF GOLD COINS,

   e. 34 U.S. MINT $10 AMERICAN EAGLE PROOF GOLD COINS,

   f. 25 U.S. $10 INDIAN HEAD GOLD COINS,

   g. 15 U.S. MINT $50 AMERICAN BUFFALO PROOF GOLD COINS,

   h. 4 U.S. MINT HALF DOLLAR KENNEDY PROOF GOLD COINS,

   i. 9,610 $1 U.S. MINT AMERICAN EAGLE SILVER

BULLION COINS,

j. 27 ASAHI REFINING 1 TROY
OUNCE SILVER ROUNDS,

k. 24 SUNSHINE MINT 1 TROY
OUNCE SILVER ROUNDS,

l. 43 UNKNOWN MINT 1 TROY
OUNCE BUFFALO DESIGN
SILVER ROUNDS.

(hereafter collectively referred to as "Defendant Property").

3.     Defendant Property was seized by the Federal Bureau of Investigation (FBI) on

November 9, 2021, and August 7, 2025, in the District of Arizona pursuant to search warrants

21-4338mb and 25-04339mb, respectively.

4.     Defendant Property is now, and during the pendency of this action will be, in the

jurisdiction of this Court.

## JURISDICTION AND VENUE

5.     The United States District Court for the District of New Mexico has subject matter

jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.     Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C.

§§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the

property is found in this district. Upon the filing of this complaint, Defendant Property will be

arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7.     In approximately July 2021, the FBI began investigating John Lopez and Personal

Money Management Company (PMMCO) for a possible investment fraud and money laundering

scheme after an investment advisor for New York Life, RM, contacted the Albuquerque Division

of the FBI regarding Lopez and PMMCO. RM explained that RM had attended a presentation by

Lopez to a group of potential investors and that Lopez had offered investment returns that RM

believed were suspiciously high. For example, Lopez offered one-year certificates of deposit with a guaranteed 10% yield. While Lopez could be considered a competitor to RM, much of the information RM provided was later corroborated through recordings and documents obtained in the investigation.

8.     The FBI investigation revealed that Lopez solicited individuals from New Mexico, Arizona, and other states to invest with PMMCO. Lopez represented that PMMCO had been in business for over 30 years and offered multiple types of investments. Lopez represented that PMMCO was able to obtain guaranteed returns at higher rates than the market by making trades using an investment model he had created. However, an investigation of Lopez's personal and PMMCO "doing business as" (DBA) accounts did not reveal trading, investments, or investment returns consistent with Lopez's representations. Rather Lopez's personal and PMMCO DBA accounts revealed commingling of investors' money, investors' money funding purchases from precious metals shops, including Route 66 Coin and Collectibles (Route 66), payments to other investors, transfers to Lopez's personal bank accounts and Charles Schwab investment account, and currency withdrawals.

9.     In November 2021, the FBI sought and obtained federal search and seizure warrants for PMMCO's office, Lopez's residence, and storage units. On November 9, 2021, the FBI executed search warrants at PMMCO's office at the time, located at 2677 7th Ave Ste 2 Flagstaff, Arizona 86004, and at Lopez's personal residence located at 2939 E. Matterhorn Drive Flagstaff, Arizona 86004 (Residence). On November 10, 2021, the FBI executed a search warrant at self-storage units located at 2500 East Huntington Drive, Flagstaff, Arizona 86004, units 206 and 202B. The FBI also executed multiple seizure warrants for the contents of financial accounts. Pursuant to the warrants, the FBI seized U.S. currency, funds and investments from financial accounts, and precious metals; the estimated total value of the seized assets was approximately $15 million on November 9, 2021.

10.     During the execution of the warrants, agents seized precious metals from a safe in PMMCO's office and from multiple safes in the Residence.



*Small safe found in Lopez's residence on November 9, 2021, before the safe was opened.*



*Small safe found in Lopez's residence on November 9, 2021, after the safe was opened.*

11.     Agents discovered two large safes in Lopez's garage that were covered by sheets. Once they were opened, agents seized millions of dollars' worth of precious metals contained in "monster boxes." A "monster box" is a term used in the precious metals industry to refer to a plastic case of bullion coins. The U.S. Mint produces monster boxes of American Silver Eagle bullion coins; the boxes are green and contain 500 one troy ounce coins.



*A "monster box" containing 500 American Silver Eagle coins*





*First large safe covered by a sheet found in the garage of Lopez's residence, filled with "monster boxes" of precious metals and firearms when opened.*

 

*Second large safe covered by a sheet found in the garage of Lopez's residence, filled with "monster boxes" of precious metals when opened.*

12.    On November 10, 2021, the FBI executed the search warrant at the commercial self-storage facility located at 2500 East Huntington Drive, Flagstaff, Arizona 86004, units 206 and 202B. Agents discovered vast quantities of precious metals in unit 206, which was secured by a padlock. Pursuant to the warrant, agents seized approximately 200 monster boxes filled with American Silver Eagle coins.



*View of contents of storage unit when it was first opened on November 10, 2021.*



*View of monster boxes in cardboard shipping boxes of coins found in storage unit after*

*agents removed other items.*

13.    Despite being alerted that the FBI was investigating him by virtue of execution of the

search warrants, Lopez continued to recruit new victims into his scheme and defraud them after

November 10, 2021. Lopez continued his practice of making false representations to defraud victims

and then converting a large portion of the proceeds into precious metals. During the investigation, the FBI learned that, as part of his fraud scheme, Lopez purchased over $3.57 million of additional precious metals and coins from Route 66 after November 10, 2021. To date, those additional investor funds have not been recovered, with the possible exception of the silver described in paragraph 37 and identified as items i. through l. in the instant complaint.

14.    On or about July 20, 2023, a federal subpoena was served on PMMCO ordering the company to produce precious metals purchased on behalf of clients. As the owner and sole principal of PMMCO, Lopez is accountable for its actions. In May 2024, in reliance on representations from Lopez's counsel, federal agents traveled from New Mexico to Flagstaff expecting the metals to be produced pursuant to the federal subpoena. When federal agents arrived, Lopez instead handed the agents a key and a note with the address of Route 66 and the name of an associated individual, suggesting that the precious metals were being held by Route 66. When agents arrived at Route 66, the store's owner denied that Route 66 was storing any precious metals for Lopez or PMMCO. The owner and another individual associated with Route 66 escorted agents around the premises, and they saw no evidence of the precious metals they were seeking.

15.    Investigators reviewed Lopez's personal and PMMCO (DBA) bank records which showed that from November 10, 2021, to approximately May 2022, Lopez received approximately $2.1 million dollars from clients.

16.    Investigators reviewed Lopez's personal and PMMCO (DBA) bank records which revealed that from November 10, 2021, to approximately May 13, 2022, Lopez spent approximately $1.1 million of newly obtained funds at Route 66.

17.    Investigators reviewed Lopez's personal and PMMCO (DBA) bank records which revealed that from November 10, 2021, to approximately August 31, 2022, Lopez disbursed approximately $903,000 to PMMCO clients, while falsely representing that the funds originated from their individual PMMCO accounts and/or from purported investment gains.

18.    A review of documentation and information from Route 66 showed Lopez purchased over approximately $3.57 million of precious metals and coins from Route 66 after the November

2021 search warrants. At some point after the November 2021 search warrants, Lopez began signing over investor checks directly to Route 66. For example, if an investor provided an investment check to PMMCO, rather than deposit the check into PMMCO accounts, Lopez would take the check to Route 66 and sign the check over to Route 66 in exchange for precious metals. By signing over client checks directly to Route 66 in exchange for gold and silver, Lopez made it more difficult for agents to trace transactions as compared to tracking transactions from his bank records.

19.    Investigators reviewed records for accounts controlled by Lopez after the November 2021 search warrants that revealed Lopez purchased approximately $1,093,705 worth of precious metals from Route 66. Investigators reviewed Route 66 records that revealed Lopez purchased approximately $2,485,094.90 worth of precious metals by signing over clients' checks to Route 66.

20.    Per Route 66 invoices, the precious metals that Lopez purchased from Route 66 following execution of the November 2021 search warrants are as follows:

        a. 101,067 American Silver Eagle coins for $3,692,346.85

        b. 50 American Gold Eagles for $94,950.00

        c. 34 unspecified gold for $18,459.00

        d. 9,700 Silver Dimes and Quarters for $27,751.00

        e. Other miscellaneous purchases totaling approximately $21,000

21.    The investigation thus far has been unable to identify the discrepancy between the total invoiced dollar amounts and the total payment dollar amount.

### PRIOR CIVIL FORFEITURE PROCEEDINGS

22.     On April 15, 2022, the United States filed a Complaint for Forfeiture *In Rem in the District of New Mexico* seeking forfeiture of the U.S. currency, funds, and precious metals seized in November 2021. (*See United States v. $217,609.52 in Funds, et.al.,* 22-cv-00283-JB-JFR, Doc. 1). The United States filed a First Amended Complaint on November 2, 2023. (*Id.,* Doc. 35). The First Amended Complaint is incorporated by reference.

23.    Pursuant to an order for interlocutory sale issued in the related criminal action (United States v. John Lopez, 22-cr-2053, Doc. 131), plaintiff sold the precious metals named as subject to forfeiture both in the criminal case and in the First Amended Complaint. The First Amended Complaint listed the precious metals sold as follows:

f. approximately 6,540 $1 U.S. Mint American Eagle Silver Bullion Coins

g. approximately 5,743 Pre-1964 U.S. Mint 90% Silver Dimes

h. approximately 2,160 $50 U.S. Mint American Eagle Gold Bullion Coins

i. approximately 1,500 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

j. approximately 500 Münze Österreich 1.5EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Silver Bullion Coins

k. approximately 236 U.S. Mint $50 American Buffalo Gold Bullion Coins

l. approximately 122 U.S. Mint $5 Commemorative Gold Bullion Coins

m. approximately 69,444 $1 U.S. Mint American Eagle Silver Bullion Coins

n. approximately 17,527 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

o. approximately 12,666 Pre-1964 U.S. Mint 90% Silver Dimes

p. approximately 5,016 Pre-1964 U.S. Mint Silver Quarters

q. approximately 198 U.S. $20 Liberty Double Eagle Gold Coins

r. approximately 157 U.S. $20 Liberty Gold Coins

s. approximately 49 Various Mint 10 Troy Ounce Silver Bars

t. approximately 66 $50 U.S. Mint American Eagle Gold Bullion Coins

u. approximately 54 $50 U.S. Mint American Eagle Proof Gold Bullion Coins

v. approximately 34 Royal Canadian Mint CA$50 Maple Leaf Gold Bullion
Coins

w. approximately 30 Suid-Afrika Krugerrand, South African Mint 1 Troy
Ounce Gold Bullion Coins

x. approximately 27 $25 U.S. Mint American Eagle Proof Gold Bullion Coins

y. approximately 12 $10 U.S. Mint First Spouse Gold Bullion Coins

z. approximately 11 $25 U.S. Mint American Eagle Gold Bullion Coins

aa. approximately 10 $5 U.S. Mint American Eagle Proof Gold Bullion
Goins,

bb. approximately 9 $10 U.S. Mint American Eagle Proof Gold Bullion
Coins

cc. approximately 5 Various Mint 1 Troy Ounce Gold Bars

dd. approximately 5 Various Mint 100 Troy Ounce Silver Bars

ee. approximately 5 Münze Österreich 100EUR Wiener Philharmoniker
[Austrian Mint Vienna Philharmonic] Gold Bullion Coins

ff. approximately 4 $10 U.S. Mint American Eagle Gold Bullion Coins

gg. approximately 3 Royal Australian Mint AU$100 Kangaroo Gold Bullion
Coins

hh. approximately 2 Perth Mint AU$100 Gold Nugget Gold Bullion Coins

ii. approximately 2 Suid-Afrika Krugerrand, South African Mint ½ Troy
Ounce Gold Bullion Coins

jj. approximately 1 $50 U.S. Mint American Buffalo Proof Gold Bullion Coin

kk. approximately 1 U.S. Mint Half Dollar Kennedy Proof Gold Bullion Coin

ll. approximately 103,000 $1 U.S. Mint American Eagle Silver Bullion Coins.

24.     Due to a miscount, the First Amended Complaint identified as item "m" approximately 69,444 $1 U.S. Mint American Eagle Silver Bullion Coins. The actual number of the Silver Bullion Coins counted and sold per the order for interlocutory sale totaled 66,944.

25.     Of the 103,000 $1 U.S. Mint American Eagle Silver Bullion Coins identified as item "ll" in the First Amended Complaint, 102,500 coins were sold per the order for interlocutory sale. One box containing 500 coins was retained as trial evidence in the related criminal case.

26.     The interlocutory sale netted $16,180,332.51. The sale proceeds were substituted as the *res* subject to forfeiture in place of the defendant property that was sold. *See* Supp. R. G(7)(b)(iv).

27.     On September 2, 2025, upon motion of the United States, the Court entered a Final Judgment (Doc. 45) forfeiting the following property to the United States:

$217,609.52 in funds from Wells Fargo account ending 8961;

$95,731.81 in funds from Wells Fargo account ending 5813;

$59,300 in U.S. Currency;

Approximately 6.07455000 in Bitcoin cryptocurrency;

Approximately 3.993 in Ethereum cryptocurrency;

The contents (funds, monies, financial instruments, and securities) held in Charles Schwab investment account last four digits #0451;

One 500-coin box of $1 U.S. Mint American Eagle Silver Bullion Coins named as subject to forfeiture as part of item ll, which was retained as evidence in the related criminal case;

$16,180,332.51 in net sale proceeds generated from execution of the order for interlocutory sale issued in the related criminal action- United States v. John Lopez, 22-cr-2053, Doc. 131.

28.     The gold coins named as items a. through h. in the instant complaint were not included in the Final Order in 22-cv-283.  The gold coins are included in the amended preliminary order of forfeiture in the related criminal case, 22-cr-2053, Doc. 196.

RELATED CRIMINAL CASE- 22-CR-2053-MLG

29.    On December 20, 2022, the Grand Jury in the District of New Mexico returned an indictment against Lopez alleging multiple counts of mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. *See United States v. Lopez*, 22-cr-2053 MLG (D.N.M. 2022) (Doc. 2). On October 17, 2023, the Grand Jury returned superseding indictment against Lopez alleging multiple counts of wire and mail fraud and money laundering in violation of 18 U.S.C. § 1957. (*Id.,* Doc. 32).

30.    On September 26, 2024, following nine days of trial, a federal petit jury in the District of New Mexico found Lopez guilty of 17 counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1-8, and 21-29), 12 counts of mail fraud in violation of 18 U.S.C. § 1341(Counts 9-20), and 2 counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. (Counts 30-31). (*See Id.,* Doc. 123).

31.    On January 3, 2025, the Court issued a preliminary order forfeiting the funds, currency, and precious metals named as subject to forfeiture in the Superseding Indictment (*Id.,* Doc. 130). Lopez consented to the preliminary order.

32.    On January 3, 2025, the Court issued an order for interlocutory sale of the precious metals named as subject to forfeiture. (*Id.,* Doc. 131).

33.    While preparing the precious metals ordered sold in the Court's order for interlocutory sale of assets, Doc. 131, the government's contractor performed a final inventory of the precious metals. During that inventory, the contractor uncovered a discrepancy in the initial accounting of the precious metals seized from the Defendant John Lopez on November 9, 2021. Approximately five monster boxes initially sorted as full boxes of silver coins in fact contained loose gold coins. The loose gold coins totaled 646 and are named as items a. through h. in this action.

34.    The United States moved to amend the preliminary order of forfeiture to include the gold coins. (*Id.* Doc. 193). On August 1, 2025, the Court issued the requested amended preliminary order of forfeiture (Doc. 196). Lopez consented to the amended preliminary order.

35.    On August 8, 2025, Lopez was sentenced to 240 months imprisonment for counts 1 through 29, and 120 imprisonment months for counts 30 and 31, to run consecutively. (*See Id.,* Doc. 205, Judgment in a Criminal Case).

<u>SEIZURE OF SILVER COINS AND ROUNDS (ITEMS i THROUGH l)</u>

36.    In August 2025, the FBI sought and obtained federal search and seizure warrants for Lopez's residence and a storage unit. On August 7, 2025, the FBI executed the search warrants. Below are photographs taken at the execution of the search warrant of Lopez's home.



*View of crawl space access in Lopez's garage on August 7, 2025.*



*View of monster boxes in crawl space of Lopez's residence on August 7, 2025*



*19 Monster Boxes located in crawl space in Lopez's residence and seized on August 7, 2025*



*Small safe found in Lopez's residence on August 7, 2025, after the safe was opened*



*Contents of some items from the small safe pictured above on August 7, 2025, after the safe was opened*

37.    Pursuant to the search warrants, the FBI seized 19 U.S. Mint monster boxes of American Silver Eagle Coins and 204 various silver coins from Lopez's home. Agents located the monster boxes in the crawl space beneath Lopez's home, several yards from the access point in the garage. Nine out of the 19 monster boxes of American Silver Eagle Coins were labeled as minted in 2022.

## FIRST CLAIM FOR RELIEF

38.    The United States incorporates by reference the allegations in paragraphs 1 through 39 as though fully set forth herein.

39.    Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

40.    Defendant Property was involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956 or is traceable to such property and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

41.    The United States incorporates by reference the allegations in paragraphs 1 through 39 as though fully set forth herein.

42.    Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

43.    Defendant Property was involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957 or is traceable to such property and is thus subject to forfeiture to

the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

44.    The United States incorporates by reference the allegations in paragraphs 1 through 39 as though fully set forth herein.

45.    18 U.S.C. § 981(a)(1)(C) provides, in pertinent, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specific unlawful activity" (SUA), as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense. An offense in violation of 18 U.S.C. § 1343 constitutes specified unlawful activity.

46.    Defendant Property constitutes the proceeds of violation(s) of 18 U.S.C. §1343, or conspiracy to commit such offense, and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## FOURTH CLAIM FOR RELIEF

47.    The United States incorporates by reference the allegations in paragraphs 1 through 39 as though fully set forth herein.

48.    18 U.S.C. § 981(a)(1)(C) provides, in pertinent, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specific unlawful activity" (SUA), as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense. An offense in violation of 18 U.S.C. § 1341 constitutes specified unlawful activity.

49.    Defendant Property constitutes the proceeds of violation(s) of 18 U.S.C. §1341, or conspiracy to commit such offense, and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

Respectfully submitted,

RYAN ELLISON
Acting United States Attorney

*/s/ Submitted Electronically 10.22.25*
STEPHEN R. KOTZ
Assistant U.S. Attorney
201 Third Street NW
Suite 900
Albuquerque, NM 87103
(505) 346-7274

**28 U.S.C. § 1746 DECLARATION**

I am a Special Agent with the Federal Bureau of Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Dated: 10/21/2025

Grant D. Nixon, Special Agent
Federal Bureau of Investigation

21